2OMAG00455   ORIGINAL

Approved: _____
KATHERINE REILLY/DINA MCLEOD
Assistant United States Attorneys

Before:  THE HONORABLE KATHARINE H. PARKER
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - X
                               :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA       :   Violation of
                               :   18 U.S.C §§ 215,
          - v. -               :   371, 1341, 1343, 1344,
                               :   1346, 1349, and 2.
RICHARD WONG,                  :
GABRIELA BRATKOVICS, and       :   COUNTY OF OFFENSE:
EVAN BROWN,                    :   NEW YORK
                Defendants.    :
                               :
- - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

    RYAN DUGGAN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

COUNT ONE
(Conspiracy to Commit Honest Services Fraud and Bank Fraud)

    1.   From in or about June 2013, up to and including in or about December 2018, in the Southern District of New York and elsewhere, RICHARD WONG, GABRIELA BRATKOVICS, and EVAN BROWN, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other, to commit honest services fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344.

    2.   It was a part and an object of the conspiracy that RICHARD WONG, GABRIELA BRATKOVICS, and EVAN BROWN, the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and to deprive a financial institution of its intangible right to WONG's honest services, would and did transmit and cause to be transmitted by means of wire, radio, and television

communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BRATKOVICS and BROWN, the co-founders of an information technology staffing company ("Company-1") caused kickback payments to be made to WONG, an employee of a large financial institution ("Bank-1"), in exchange for WONG's assistance in securing contracts between Company-1 and Bank-1 and providing BRATKOVICS and BROWN information about Bank-1's procurement process, in violation of Title 18, United States Code, Section 1343.

3. It was further a part and an object of the conspiracy that RICHARD WONG, GABRIELA BRATKOVICS, and EVAN BROWN, the defendants, and others known and unknown, willfully and knowingly, would and did execute and attempt to execute a scheme or artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation ("FDIC"), and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, BRATKOVICS and BROWN procured contracts to provide services to Bank-1, which was insured by the Federal Deposit Insurance Corporation, by providing kickbacks to WONG, a Bank-1 employee, in violation of its agreement with Bank-1, in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Section 1349.)

COUNT TWO
(Honest Services Wire Fraud)

4. From at least in or about June 2013, up to and including at least in or about July 2018, in the Southern District of New York and elsewhere, RICHARD WONG, GABRIELA BRATKOVICS, and EVAN BROWN, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive a financial institution of its intangible right to WONG's honest services, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BRATKOVICS and BROWN caused kickback payments to be made to WONG, in exchange for WONG's assistance in securing contracts between Company-1 and

Bank-1 and providing BRATKOVICS and BROWN information about Bank-1's procurement process.

(Title 18, United States Code, Sections 1341, 1343, 1346, and 2.)

### COUNT THREE
### (Bank Fraud)

5. From at least in or about June 2013 through at least in or about July 2018, in the Southern District of New York and elsewhere, RICHARD WONG, GABRIELA BRATKOVICS, and EVAN BROWN, the defendants, and others known and unknown, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the FDIC, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, BRATKOVICS and BROWN procured contracts to provide services to Bank-1, which was insured by the FDIC, by providing kickbacks to WONG, a Bank-1 employee, in violation of its agreement with Bank-1.

(Title 18, United States Code, Sections 1344, and 2.)

### COUNT FOUR
### (Conspiracy to Commit Bribery)

6. From at least in or about June 2013 through at least in or about December 2018, in the Southern District of New York and elsewhere, RICHARD WONG, GABRIELA BRATKOVICS, and EVAN BROWN, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Sections 215(a)(1) and 215(a)(2).

7. It was a part and object of the conspiracy that GABRIELA BRATKOVICS and EVAN BROWN, the defendants, and others known and unknown, would and did corruptly give, offer, and promise a thing of value greater than $1,000 to a person, with the intent to influence and reward an officer, director, employee, agent, and attorney of a financial institution, to wit RICHARD WONG, the defendant, an employee of a financial institution, in connection with the business and a transaction

of such institution, in violation of Title 18, United States Code, Section 215(a)(1).

8. It was further a part and object of the conspiracy that RICHARD WONG, the defendant, as an officer, director, employee, agent, and attorney of a financial institution, would and did corruptly solicit and demand for the benefit of a person, and corruptly accepted and agreed to accept, a thing of value greater than $1,000 from GABRIELA BRATKOVICS and EVAN BROWN, the defendants, and others, known and unknown, with the intent to be influenced and rewarded in connection with business and a transaction of such institution, in violation of Title 18, United States Code, Section 215(a)(2).

## Overt Acts

9. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

 a. On or about July 31, 2018, a company controlled by GABRIELA BRATKOVICS, the defendant, ("Company-2") wired approximately $23,208.75 to a bank account ("Account-1") controlled by RICHARD WONG, the defendant, as a kickback for WONG'S aid in securing Company-1 business with Bank-1.

 b. On or about the following day, August 1, 2018, WONG withdrew $500 from Account-1 at an ATM located in New York, New York.

(Title 18, United States Code, Section 371.)

## COUNT FIVE
(Bribery - WONG)

10. From at least in or about June 2013 through at least in or about July 2018, in the Southern District of New York and elsewhere, RICHARD WONG, the defendant, as an officer, director, employee, agent and attorney of a financial institution, to wit, Bank-1, did corruptly solicit and demand for the benefit of a person, and corruptly accepted and agreed to accept, a thing of value greater than $1,000 from a person, to wit, GABRIELA BRATKOVICS and EVAN BROWN, the defendants, with the intent to be

influenced and rewarded in connection with business and a transaction of such institution.

(Title 18, United States Code, Section 215(a)(2) and 2.)

## COUNT SIX
### (Bribery - BRATKOVICS and BROWN)

11.  From at least in or about June 2013 through at least in or about July 2018, in the Southern District of New York and elsewhere, GABRIELA BRATKOVICS and EVAN BROWN, the defendants, did corruptly give, offer, and promise a thing of value greater than $1,000 to a person, with the intent to influence and reward an officer, director, employee, agent, and attorney of a financial institution, to wit, RICHARD WONG, the defendant, an employee of Bank-1, in connection with business and a transaction of such institution.

(Title 18, United States Code, Section 215(a)(1) and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

12.  I am a Special Agent with the FBI. I am currently assigned to a squad responsible for investigating wire fraud, bank fraud, securities fraud, money laundering, and other white-collar offenses. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my examination of reports and records, interviews I have conducted, and conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, unless noted otherwise.

13.  In the course of this investigation, I have reviewed publicly available documents and documents produced by a large financial institution ("Bank-1"), voluntarily and in response to grand jury subpoenas. As a result, I am aware of the following, in substance and in part:

   a.  RICHARD WONG, the defendant, was an employee of Bank-1 from in or about August 2011 through in or about July 2018. WONG worked in a New York, New York office of Bank-1, in

5

the Procurement Division. In that capacity, WONG was responsible for, among other things, managing relationships with certain vendors, negotiating contracts, reviewing requests for proposals, and requesting quotes for services.

      b. GABRIELA BRATKOVICS and EVAN BROWN, the defendants, are the co-founders of Company-1, a company that, among other things, provides temporary information technology staffing to various corporate clients. BRATKOVICS is the Chief Executive Officer of Company-1, and BROWN is the Chief Financial Officer of Company-1. BRATKOVICS also controls Company-2, a separate entity identifying itself on a publicly available website as an information technology staffing provider. BRATKOVICS is the only signer on Company-2's bank accounts.

      c. Throughout the period charged herein, Bank-1 had in place several policies that addressed Bank-1 employees' duty to maintain the confidentiality of Bank-1's business information, as well as the limitations on employees' ability to accept outside compensation or to engage in any activity that might present a conflict of interest in light of their employment by Bank-1.

      i. In or about August 2011, in connection with his beginning work for Bank-1, WONG signed several documents acknowledging that he understood various policies of Bank-1 pertaining to confidentiality. For example, on or about August 10, 2011, WONG signed an "Intellectual Property & Confidential Information Agreement," in which he agreed not to disclose confidential information belonging to Bank-1 "to any third party or for any purpose not authorized by [Bank-1] or required by law." This confidential information included, but was not limited to, "pricing information" and "internal reports," among other things.

      ii. Similarly, on or about August 23, 2011, WONG signed a statement acknowledging that he had received the applicable employee handbook and understood his obligation to read and become familiar with its provisions. WONG signed similar statements with regard to the 2013, 2015 and 2017 handbooks. Each of these employee handbooks contained provisions prohibiting Bank-1 employees from undertaking anything that would be a conflict of interest with their responsibilities as Bank-1 employees. Each of these employee handbooks also included a "Code of Personal Responsibilities," which prohibited, among other things, "[t]heft and any unauthorized or inappropriate removal or possession of [Bank-1]

6

property[,]" "[c]onduct that's unlawful or unethical[,]" "[m]isappropriation of assets, services or benefits[,]" "[f]raud or dishonesty[,]" [i]nappropriate use of handling of Confidential Information[,]" "[s]olicitation of money from employees, vendors, or clients…for any other non-business purpose[,]" and "[a]ny conduct or activity that could raise questions about your honesty, impartiality, ethics, or reputation[.]"

        d.    In or about June 2013, Bank-1 entered into a master services agreement (the "MSA") with Company-1. The MSA was signed by BRATKOVICS, on behalf of Company-1. Under the MSA, Company-1 agreed that "no officer, director, employee of [Bank-1], or any of their immediate family members has received or will receive anything of value of any kind from [Company-1] or its Personnel in connection with this Agreement." Company-1 further agreed that neither it nor any of its personnel would make a payment or confer a benefit upon any person "with the intent to induce (or to reward) the recipient…to do or omit to do any act in violation of their duties or responsibilities, to reward any such conduct or to otherwise improperly influence any person in any manner relating to this Agreement[.]"

        e.    Company-1 began providing services to Bank-1 pursuant to the MSA in or about July 2013. Between in or about July 2013 and in or about December 2018, Bank-1 paid Company-1 in excess of $8.4 million for staffing services. Throughout this period, WONG, in his role as an employee in Bank-1's procurement division, was responsible for Bank-1's relationship with Company-1.

    14.    In the course of this investigation, I have reviewed documents produced in response to a judicially authorized search warrant of the personal e-mail account utilized by RICHARD WONG the defendant (the "Wong Personal E-mail"), as well as documents produced by Bank-1 both voluntarily and in response to grand jury subpoenas, including e-mails sent and received by WONG's Bank-1 e-mail account (the "Wong Bank-1 E-mail"). As a result, I am aware of the following, in substance and in part:

        a.    Between in or about January 2014 and in or about December 2018, GABRIELA BRATKOVICS, and EVAN BROWN, the defendants, acting on behalf of Company-1, caused approximately $891,000 to be transferred to WONG, in the form of cash, checks, and wire transfers. Indeed, between in or about December 2014 and December 2018, personal bank accounts held by WONG received approximately 40 wire transfers from accounts in the name of

7

BRATKOVICS, Company-1, and Company-2. Based upon my review of e-mails sent and received by the Wong Personal E-mail and the Wong Bank-1 E-mail, I believe that these payments were kickbacks, designed to compensate WONG for assisting Company-1 in securing Bank-1's business and providing Company-1 with information about Bank-1's procurement process. I further believe that the total amount of each kickback payment was tied to the number of hours of Company-1's services Bank-1 utilized during a particular time period, typically each month.

    b. Approximately three months after Company-1 began providing services to Bank-1 pursuant to the MSA, WONG began discussing possible kickbacks with BRATKOVICS and BROWN, including in the following e-mails sent from the WONG Personal E-mail. On or about October 8, 2013, WONG sent an e-mail to BROWN, writing, in substance and in part, "Send me your spreadsheet on the 5 resources I gotten for you…And your proposal…Let's get on the same page[.]" Approximately two months later, on or about December 9, 2013, WONG e-mailed BROWN, copying BRATKOVICS, writing, in substance and in part, "Can you guys send me what you have so I can see the data …not saying I will want the money now…but want to see how it looks likes [sic][.]"[1]

    c. On or about January 6, 2014, BRATKOVICS sent WONG an e-mail, copying BROWN, and attaching a spreadsheet titled "Invoice_Details as of 120913.xls." The spreadsheet appears to detail the names and hours worked by Company-1 staffers at Bank-1 for the period from on or about October 11, 2013 through on or about December 9, 2013. At the bottom of the spreadsheet is a calculation that appears to determine how much Company-1 is to pay WONG in kickbacks for this period; specifically, the spreadsheet awarded WONG $250 per week for each week certain employees worked at Bank-1 and $5 per hour for each hour other employees worked at Bank-1, resulting in a "[t]otal due" of $5,835.00. On or about January 3, 2014, $5,835.00 in cash was deposited into a bank account held by WONG at Bank-1 ("Account-2").

    d. On or about February 4, 2014, BRATKOVICS sent WONG an e-mail, copying BROWN, and attaching a spreadsheet titled "Invoice & Time Sheet Status 120113-010414.xls," which appears to detail the names and hours worked by Company-1 staffers at Bank-1 for the period from December 1, 2013 through

---

[1] The ellipses contained in the quoted section herein appear in the original text.

8

January 17, 2014. At the bottom of the spreadsheet is a calculation that appears to determine how much WONG is to be paid by Company-1 for this period, resulting in a "[t]otal due" for this period of $3,962.50. On or about February 7, 2014, $3,963.00 in cash was deposited into Account-2.

       e.    On approximately 10 additional occasions between in or about March 2014 and in or about February 2015, BRATKOVICS, acting on behalf of Company-1, sent WONG e-mails, copying BROWN, and attaching spreadsheets similar to those discussed in paragraphs 12(c) and 12(d), setting forth total amounts due to WONG based on the Company-1 services utilized by Bank-1 during particular time periods. Corresponding cash deposits were subsequently deposited into Account-2.

       f.    As the scheme progressed, BRATKOVICS and BROWN began paying WONG kickbacks using wire transfers and checks. On more than 40 occasions between in or about December 2014 and in or about December 2018, WONG received wire transfers from BRATKOVICS and Company-1 and deposited checks from Company-2, in amounts between approximately $7,695 and $31,700. These transfers also appear designed to compensate WONG based on the Company-1 services utilized by Bank-1.

       i.    For example, on or about July 28, 2015, BRATKOVICS sent WONG an e-mail, copying BROWN, and attaching "the revised report." Like the spreadsheets discussed above, the attached Excel spreadsheet appears to detail the names and hours worked by Company-1 staffers at Bank-1, in this case for the period from in or about May 3, 2015 through in or about May 30, 2015. The "[t]otal due" listed at the bottom of the spreadsheet is $8,632.50. WONG replied to this e-mail, writing, in substance and in part, that "after all these businesses that I have given you…think we can make our life simpler just do it one way…$250 for every week (which is 40 hours per week)," noting that his proposal would result in a payment of $9,000 instead of a payment of "$8,632[.]50 (your latest report)" WONG added, "If you want to talk, please msg[.] me and if I am free, we will talk. But I think this is fair and we don't need to haggle among friends….especially when you have more opportunities in the pipeline." Later the same day, WONG e-mailed BRATKOVICS and BROWN, writing, in substance and in part, "[p]er my conversation with Evan, I am in agreement with the final number of $8,632.50. Evan, can you deposit the check to my account for that amount as soon as you can[?]" A cashier's check in the amount of $8,632.50, drawn on the account of

9

Company-1, was deposited into Account-2 on or about July 28, 2015.

        g.    On multiple occasions during the charged period, WONG e-mailed BRATKOVICS and BROWN inquiring, in substance and in part, as to when he would receive funds and expressing urgency about his receipt of those funds. For example:

        i.    On or about October 26, 2015, WONG e-mailed BRATKOVICS and BROWN, writing, in substance and in part, "I need help…Can you please provide the report to me today and wire the money today. [An individual ("Individual-1")] is in the hospital and she has no money to get out of the hospital and I need the cash to wire her…Please help if you can." WONG then forwarded the e-mail to Individual-1, writing, in substance and in part, "I am trying my best honey…I really am…don't be mad at me."[2] Later on or about October 26, 2015, BRATKOVICS sent WONG an e-mail, copying BROWN, with an "Invoice Report" covering the period from August 2, 2015 to August 29, 2015 and an attached Excel spreadsheet listing the "Total due up to 08/29/15" as $10,787.50. On or about October 27, 2015, BRATKOVCS transferred $10,787.50 to WONG.

        ii.    On or about April 4, 2016, WONG, using the Wong Bank-1 E-mail, e-mailed BROWN, copying BRATKOVICS, writing, in substance and in part, "Thought you were going to meet me and give me directly....but if you deposit it by 2:30…..I am good too." When BROWN responded, in substance and in part, that he had flown out on a "[l]ast minute trip," WONG replied, in substance and in part, that BROWN "need[ed] to do a Wire for me when you land," as WONG "need[ed] it today[.]" The following day, on or about April 5, 2016, BRATKOVICS wired approximately $12,888.75 to WONG.

        h.    During the charged time period, WONG, BRATKOVICS, and BROWN also discussed by e-mail on multiple occasions which accounts WONG could use to receive the kickback payments; for much of the period the scheme was in operation, the payments were directed to Account-2. For example, on or about May 30, 2017, in an e-mail to BROWN and BRATKOVICS discussing a transfer, WONG promised to provide "a new account to you next month[.]" On or about June 25, 2018, WONG sent BROWN and BRATKOVICS an e-mail containing account information for Account-1, which received all of the subsequent payments sent by

---

[2]    The ellipses contained in the quoted sections in this paragraph appear in the original text.

BRATKOVICS on behalf of Company-1. Even after that, BRATKOVICS pushed WONG by e-mail to establish a corporate entity to receive the payments. On or about July 27, 2018, BRATKOVICS wrote, in substance and in part, "It takes 5 minutes to set [up] a company and [a] few min[utes] to do the bank account, you told me last time it would be the last time. This is putting me in a really bad position[,] I think we are playing with fire. I would really appreciate it if this [is] truly the last time we are doing it this way." WONG replied, in substance and in part, that he would set up a business account after his accountant returned from vacation, adding that he was "no longer with [Bank-1] and it is a [Bank-2] account," such that "they should not be able to see anything[.]"

   i.   Throughout the period in which WONG was receiving kickbacks from Bank-1, Company-1 not only continued to procure contracts from services for Bank-1, but WONG also repeatedly provided BRATKOVICS and BROWN with information about Bank-1's internal discussions regarding use of Company-1's services by blind carbon copying them on e-mails. For example:

   i.   On or about February 13, 2015, WONG e-mailed with other employees of Bank-1 regarding a new position to be filled by Company-1, including writing, in substance and in part, that the proposed rate of pay that was to be offered to Company-1 "seem[ed] very low to me" and he was "not sure if we can make this work[.]" WONG blind carbon copied BROWN on this e-mail.

   ii.   On or about February 18, 2018, BRATKOVICS e-mailed WONG, copying BROWN, regarding potential open positions that might be filled by Company-1. WONG replied, in substance and in part, "will bcc you on the email to [an employee of Bank-1.]"

   iii.   On another occasion, in or about March 2018, WONG exchanged e-mails with another Bank-1 employee regarding staffing requests. WONG appears to have blind carbon copied BROWN on an e-mail regarding a "swap" of individuals in particular positions. In response to that e-mail, BROWN replied to everyone copied on the e-mail, writing, in substance and in part, that Company-1 was "good with the switch just let us know what you want us to do." In response, WONG e-mailed BROWN, removing the other Bank-1 employee from the e-mail chain, and writing, in substance and in part, "[y]ou need to stop using the bcc email I copy you to send to people," adding "you are killing me."

11

j.  On or about April 30, 2018, WONG was notified by Bank-1 that his employment would be terminated as of on or about July 29, 2018, as his position had been eliminated. Bank-1 continued to employ the services of Company-1 until in or about December 2018. Accordingly, WONG continued to receive payments from accounts controlled by BRATKOVICS and COMPANY-1 even after his employment was terminated, until in or about December 2018. On or about December 4, 2018, BRATKOVICS e-mailed WONG, copying BROWN, writing, in substance and in part, "[t]his is the last report, please review." Like those discussed in paragraphs 12(c) and 12(d), the spreadsheet attached to the e-mail appears to detail the names and hours worked by Company-1 staffers at Bank-1, in this case for the period from on or about September 2, 2018 through on or about December 3, 2018. The "[t]otal due" listed at the bottom of the spreadsheet is $7,695. On or about December 4, 2018, Company-1 transferred $7,695 to Account-2.

WHEREFORE, deponent prays that an arrest warrant be issued for RICHARD WONG, GABRIELA BRATKOVICS, and EVAN BROWN, the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

```
                              _____
                              RYAN DUGGAN
                              Special Agent
                              Federal Bureau of Investigation
```

Sworn to before me this
14th day of January, 2020

_____
THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK